# In the United States District Court
## For the District of Puerto Rico

| | |
|---|---|
| **SERAFIN CORTES-MONTERO, by himself and on behalf of his minor son CCM**<br>    *Plaintiffs*<br><br>     **Vs.**<br><br>**METROHEALTH CENTRAL CORPORATION, doing business as HOSPITAL METROPOLITANO DE LA MONTAÑA, METRO PAVIA HEALTH SYSTEM, INC., doing business as HOSPITAL PAVIA ARECIBO, DR. HERMINIO MENDEZ-LOPEZ, JOAN DOE-MENDEZ, CONJUGAL PARTNERSHIP MENDEZ-DOE, DR. JOSE VILLAFAÑE-RIERA, JOAN DOE-VILLAFAÑE, CONJUGAL PARTNERSHIP VILLAFAÑE-DOE, DR. LUIS ARANA-MORAN, JOAN DOE-ARANA, CONJUGAL PARTNERSHIP ARANA-DOE, DR. HECTOR ALBARRAN, JOAN DOE-ALBARRAN, CONJUGAL PARTNERSHIP ALBARRAN-DOE, DR. JOSE L. PORTALATIN-RODRIGUEZ, JOAN DOE-PROTALATIN, CONJUGAL PARTNERSHIP PORTALATIN-DOE, DR. EDWIN SOLER-CANDELARIA, JOAN DOE-SOLER, CONJUGAL PARTNERSHIP SOLER-DOE, ABC INSURANCE COMPANY, DEF INSURANCE COMPANY,  XYZ INSURANCE COMPANY AND S.I.M.E.D.**<br>    *Defendants* | **CIVIL NO. 17-2368**<br><br><br>**TRIAL BY JURY DEMANDED** |

# COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** plaintiffs, through the undersigned counsel, and very respectfully, state, allege and pray as follow:

## I. NATURE OF THE ACTION

1.1    This is an action seeking compensatory damages by Plaintiff Serafín Cortes-Montero, by himself and representing his minor son CCM, and as heirs of the causes of action of the deceased Alice Medina-Valentin.   Plaintiffs bring a cause of action against Metrohealth Central Corporation and Metro Pavia Health System, Inc., that arises under the provisions of the Emergency Medical Treatment and Active Labor Act ("EMTALA") 42 USC §1395, as to which they invoke federal question jurisdiction pursuant to 28 U.S.C. §1331. These claims relate to the EMTALA claim and form part of the same case or controversy under Article III of the US Constitution. Plaintiffs also invoke supplemental jurisdiction under 28 U.S.C. §1367 over the claims arising under Puerto Rico law against Metrohealth Central Corporation, Metro Pavia Health System, Inc. Similarly, against the remaining codefendant doctors, their spouses, conjugal legal partnerships formed between them and their insurance carriers.

## II. JURISDICTION AND VENUE

2.1    This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1331, since the present action is brought in accordance with the provisions of 42 U.S.C.A. §1395dd, et seq.,

2.2    Venue is proper pursuant to 28 U.S.C.A. § 1391 since the claims asserted in this action arose in this judicial district.

2.3    This Court has supplemental jurisdiction over all causes of action arising under the Constitution and laws of the Commonwealth of Puerto Rico, specifically 31 L.P.R.A. §§

5141, 5142, and 3142, as established by 42 U.S.C.A. §§ 1395dd, and 1367(a), inasmuch as all claims stem from the same nucleus of operative facts.

2.4     In accordance with the provisions of 28 U.S.C.A. § 1332, the Plaintiffs demand trial by jury.

### III. THE PARTIES

3.1     Plaintiff Serafin Cortes-Montero, by himself and on behalf of his minor son, CCM, resides in Utuado, Puerto Rico, with the latter, and is the widower of the deceased Alice Medina-Valentin. CCM is the minor son of the deceased Alice Medina-Valentin, represented in the present action by his father Serafin Cortes-Montero, as stated.

3.2     Metrohealth Central Corporation, doing business as Hospital Metropolitano de la Montaña, is a corporate entity duly organized in accordance with the laws of the Commonwealth of Puerto Rico, dedicated to bringing primary health services to the public, with its facilities in Utuado, Puerto Rico. As more particularly set forth below, the negligent acts and omissions of said defendant's agents, as Dr. Herminio Méndez-López, Dr. José Villafañe-Riera and the triage nurse, caused and contributed to patient's damages and demise and, to plaintiffs' damages alleged herein.

3.3     Metro Pavía Health System, Inc. doing business, as Hospital Pavía Arecibo is a corporate entity duly organized in accordance with the laws of the Commonwealth of Puerto Rico, dedicated to bringing tertiary health services to the public, with its facilities in Arecibo, Puerto Rico, including an emergency department. As more particularly set forth below, the negligent acts and omissions of said defendant's agents, as Dr. José L. Portalatín-Rodríguez, Dr. Edwin Soler-Candelaria and the triage nurse, caused or contributed to patient's damages and demise and, to plaintiffs' damages alleged herein.

3.4     Codefendant Dr. Luis R. Arana-Moran, his wife Joan Doe-Arana, and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico. Dr. Arana-Moran is the emergency room physician who managed and treated Alice Medina-Valentin on December 26, 2015 at the emergency room of Hospital Metropolitano de la Montaña in Utuado, Puerto Rico.

3.5     Codefendant Dr. Herminio Méndez-Lopez, his wife Joan Doe-Méndez, and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico. Dr. Méndez-López is an emergency room physician who managed and treated Alice Medina-Valentin on December 27, 2015 at the emergency room of Hospital Metropolitano de la Montaña.

3.6     Codefendant Dr. José Villafañe-Riera, his wife Joan Doe-Villafañe, and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico. Dr. Villafañe-Riera is the physician who transferred Alice Medina-Valentin in an unstable condition to Hospital Pavia Arecibo on December 28, 2015 during her second visit to Hospital Metropolitano de la Montaña.

3.7     Codefendant Dr. José L. Portalatín-Rodríguez, his wife Joan Doe-Portalatín, and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico. Dr. Portalatín-Rodriguez managed and treated Alice Medina-Valentin on December 28, 2015 at Hospital Pavia Arecibo.

3.8     Codefendant Dr. Héctor Albarrán, his wife Joan Doe-Albarrán, and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico.  Dr. Albarrán managed and treated Alice Medina-Valentin on December 28, 2015 at Hospital Pavia Arecibo.

3.9     Codefendant Dr. Edwin Soler-Candelaria, his wife Joan Doe-Soler, and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico. Dr. Soler-Candelaria is the surgeon who ordered the transference of Alice Medina-Valentin in unstable condition on December 29, 2015 to the Puerto Rico Medical Center in San Juan, Puerto Rico.

3.10    ABC Insurance Company, DEF Insurance Company and XYZ Insurance Company are insurers of one or more codefendants, with policy insurances issued in their favor, accumulated under fictitious names, as their real names are unknown at present.

3.11    SIMED issued insurance coverage in favor of one or several defendant doctors.

### IV. ALLEGATIONS OF FACTS COMMON TO ALL CAUSES OF ACTION

4.1     At the time of her demise, as more particularly set forth below, Mrs. Alice Medina-Valentin was a 45-year-old patient with a history of hypertension, type II diabetes and umbilical hernia, conditions for which she took prescribed medications.

4.2     On December 26, 2015 around 8:25 pm, Medina-Valentin came to Hospital Metropolitano de la Montaña's emergency room complaining of acute abdominal pain.

4.3     The triage nurse took the patient's vital signs, which resulted in a blood pressure of 150/84, heart rate of 105 and respiratory rate of 17. According to her charts, her weight was 260 lbs., which may have been in error as she was tipping the scale at approximately 350 lbs.

4.4     After the triage, Dr. Luis R. Arana Moran examined patient and ordered the administration of Decadron®, Benadryl® and Pepsid®, and an electrocardiogram that evidenced no specific findings. He lacked a lab order.

4.5     Information as to the patient's past medical history or the medications she took at that moment were not wrote by neither the nursing staff or by the emergency room physician.

4.6     The patient's history notes taken by Dr. Arana-Moran make no mention of the intensity of the abdominal pain or its specific location.

4.7     Dr. Arana-Moran discharged patient home with a gastroenteritis diagnosis, not supported by the documented history.

4.8     At discharge, the patient's respiratory rate was 20, blood pressure 128/82 and heart rate of 105 bpm. The medical records deviated from the medical standard and acceptable discharge and return instructions.

4.9     Without her symptoms getting better, patient returned to Hospital Metropolitano by ambulance during the early night hours of December 27.

4.10     The triage nurse took her vital signs, resulting again in tachycardia and blood pressure of 146/93. According to the charts, this time, patient weighed 340 lbs.

4.11     At 7:41 pm, the patient was examined by codefendant Dr. Herminio Méndez-Lopez, making a provisional diagnosis of "umbilical hernia" without doing or failing to annotate in the medical records if an adequate abdominal examination or if the hernia irreducible or incarcerated, and if laboratory examination or radiography studies were ordered.

4.12     Dr. Mendez-Lopez discharged patient at 10:10 pm with a final diagnosis of umbilical hernia, lacking standard laboratory examination, X-rays studies, neither making a CT scan.

4.13     Although Dr. Mendez-Lopez' and the nursing staff's note at the time of discharge depicted that patient referred having no abdominal pain and that her pain had improved, this was after the administration of several medications including analgesic, which obviously masked the symptoms.

4.14    Patient's medical record was modified by Dr. Mendez-Lopez. He wrote in some addendum that she refused to undergo a computerized tomography, allegedly because the results would have taken too much time, which was untrue. The patient time of discharge was 10:06 pm, predating this note, since Dr. Mendez-Lopez's supposedly wrote it at 10:20 pm.

4.15    The next day, on December 28, patient's symptoms persisted, so she came for the third time to "Hospital Metropolitano de la Montaña" by ambulance, around 2:21 pm, complaining of abdominal pain.

4.16    The triage nurse at Hospital Metropolitano de la Montaña took the patient's vital signs, which resulted in a blood pressure of 105/70, heart rate of 119, and a respiratory rate of 19.

4.17    Dr. Astrid Arce-Ramos saw patient, who recorded a 3-day evolving abdominal pain, associated with nausea, vomiting, and poor appetite, with an area of "periumbilical induration".

4.18    Dr. Arce-Ramos found Alice to have generalized abdominal pain to palpation, negative rebound and diminished bowel sounds. She proceeded to order lab studies and a CT scan of the patient's abdomen and pelvis.

4.19    The results of Alice's CT scan study were compatible with an incarcerated umbilical hernia and an extent of small bowel obstruction.

4.20    The results from the laboratory examination showed the patient to have a "panic high" white blood cell count, evidencing a focus of infection, but, nevertheless, empiric intravenous antibiotics were not given to her.

4.21    Patient transferred around 10:00 pm to Hospital Pavia Arecibo for an emergency surgical evaluation.

4.22    The medical records does not document the standard form employed to register compliance with the Emergency Medical Treatment and Active Labor Act (EMTALA) respecting the transfer of patients from one institution to another.

4.23    Around 11:08 pm, the patient arrived at Hospital Pavia Arecibo, being receive by Dr. Hector Albarran or Dr. José L. Portalatin who documented his findings on December 29 at 2:20 pm.

4.24    At 10:40 pm, patient's vital signs showed a blood pressure of 130/80, a pulse of 80 and a respiratory rate of 18. According to the charts, her weight was 300 lbs.

4.25    Alice had an elevated white blood cell count of 23.7 and was administered intravenous antibiotics.

4.26    At 11:38, the patient's vital signs revealed a blood pressure of 117/69, temperature of 36 C, heart rate 113 and a respiratory rate of 20.

4.27    An unknown surgical consultant at this moment identified the patient's irreducible hernia, complicated by cellulitis on the CT scan that most certainly was indicative of ischemic bowel, if not patent perforation.

4.28    Despite the patient's emergency medical conditions, including a strangulated and potentially perforated umbilical hernia, and the delays in surgical care that it represented, patient got transfer to Puerto Rico Medical Center lacking the clearly required surgery.

4.29    At 3:11 pm, the patient arrived at the PR Medical Center emergency department, where she was again evaluated.

4.30    According to a physical examination documented at 7:10 pm, there were no abnormalities, including an examination of patient's abdomen.

4.31    Lab results showed that the patient had a white blood cell count of 15.7, moderately severe hypokalemia and likely contraction of alkalosis.

4.32    Without a surgical consultation and lacking instructions as to when to return to the emergency room, if necessary, later that night patient was sent home.

4.33    On January 2 at 5:00 pm, the patient returned to "Hospital Metropolitano de la Montaña" with abdominal pain and history of being incapable to defecate for eight days.

4.34    The patient's vital signs consisted of a blood pressure of 160/70, heart rate of 140 and a respiratory rate of 20. Lab test results revealed a white blood cell count of 12.76, 83.2% neutrophils and an elevated amylase of 438.

4.35    The CT scan results evidenced an intestinal perforation and small bowel obstruction, and again she was transferred to the PR Medical Center.

4.36    The patient got an evaluation at its emergency department and was transfer to the Operation Room at 3:30 am where a perforation in her small bowel was found.

4.37    Even though patient survived surgery, approximately at 7:30 pm, she suffered a cardiac arrest in the surgical intensive care unit and efforts of resuscitation where fruitless.

## V.    MEDICAL MALPRACTICE &
## HOSPITAL NEGLIGENCE CLAIMS

5.1    Ms. Medina-Valentin visited Hospital Metropolitano de la Montaña on three occasions. From the moment she stepped into the emergency department in all of those visits, the management and treatment by the nursing staff, Dr. Arana-Moran, Dr. Méndez-López and Dr. Villafañe-Riera totally departed from the accepted standards of medical practice.

5.2    On patient's first visit, deviations from the standard of medical care were incur by the nursing staff and by Dr. Arana-Moran, by failing to obtain and document an adequate past medical and surgical history. They also failed to obtain and document an adequate history of the

present illness; failing to perform and record an adequate examination of the patient's abdomen, including no mention of an umbilical hernia, and by failing to provide reasonably prudent medical screening examination to Ms. Medina.

5.3     An adequate differential diagnosis was not perform for a patient like Ms. Medina presenting with acute post-prandial abdominal pain and her significant past medical and surgical history. Moreover, by diagnosing her with the unsupported condition of "Gastroenteritis", which was not consistent with her documented history, Dr. Arana-Moran deviated from the standard of medical care applicable in these cases.

5.4     On patient's second visit to "Hospital Metropolitano de la Montaña", a deviation from the standard medical care was incur by both, the nursing personnel and Dr. Méndez-López. They failed to obtain and document an adequate past medical and surgical history and by failing to obtain and document an adequate history of the present illness. They also failed to perform and record an adequate examination of the patient's abdomen, including making no mention of an umbilical hernia, and by failing to provide reasonably prudent medical screening examination to a patient returning a second time to the emergency room with persistent abdominal pain associated with umbilical hernia.

5.5     On this second visit, the standard of medical care was also breached when they got rid of the patient, lacking a proper medical screening, in the presence of an emergency medical condition, They also failed by not educating the patient as to follow-up, return and discharge instructions and by not transferring her to a higher level of care, if that institution was incapable to give a timely medical screening in their emergency room.

5.6     On patient's third visit to "Hospital Metropolitano de la Montaña", there was a deviation from the standard of medical care by the nursing staff and by Dr. Villafañe-Riera by

failing to provide standard emergency care and stabilization and by neglecting to treat patient with appropriate IV antibiotics prior to transfer to Hospital Pavia Arecibo.

5.7     At Hospital Pavia Arecibo, the standard of medical care was breached by both, nursing staff and Dr. Portalatín-Rodriguez and/or Dr. Hector Albarrán, by transferring an unstable patient while the institution could have perform the surgical procedure needed in this case, and considering the predictable delay that transferring a patient would entail.

5.8     Neither the triage nurses nor anyone, for that matter, did an appropriate screening in these institutions, which in turn gave way to incorrect diagnoses. Co-defendants decided time after time to discharge the patient without adequate stabilization and no definitive care for her condition.

5.9     By not following the accepted and established medical standards during patient's visits to these institutions, defendants deprived patient of the only opportunity to survive her medical condition. Should they all act within the applicable medical standards, patient would have survived the experience.

5.11     During patient's visits to the aforementioned hospitals, the codefendants physicians, as their agents, and their nursing staff were negligent, therefore, being all jointly liable to plaintiffs for the alleged damages.

5.12     None of the defendants' agents or employees displayed the care or the previsions that a prudent and reasonable man would in such circumstances, thus, not offering patient the medical attention that was due to her, by correctly categorizing her condition and treating her accordingly.

5.13     Codefendants physicians were grossly negligent in their treatment or lack thereof, to wit: failure to screen, diagnose and implement corrective treatment; failure to order measures

and medications that were indicated and necessary for the treatment of patient's condition. Their negligent acts, errors and omissions directly caused or contributed to her damages, deterioration and death.

5.14    As insurance carriers to one or more codefendants, ABC Insurance Company, DEF Insurance Company and XYZ Insurance Company are liable to plaintiffs for their insureds´ negligence. As insurance company of one or more defendant doctors, SIMED is liable for their insureds´ negligence.

5.15    All the Codefendants Conjugal partnerships formed between spouses respond for plaintiffs' damages as they benefited from their spouses' medical practice.

## VI.    EMTALA VIOLATION

6.1    As previously alleged herein, "Hospital Metropolitano de la Montaña" and "Hospital Pavia Arecibo" offer emergency medical care and are participating hospitals under the EMTALA provisions.

6.2    As agents or employees of said institutions, codefendant´s Doctors were grossly negligent in their treatment or lack thereof, to wit: lack of screening of an ill patient with clear signs of bowel obstruction; inability to recognize clear symptoms; failure to diagnose and implement corrective treatment in a timely manner; failure to order measures and medications which were indicated and necessary for the treatment of his condition; and discharging or transferring the patient in a unstabilized medical condition. They were also negligent in not procuring Ms. Medina the attention required for a patient going to the emergency room with signs of an emergency abdominal condition and discharging her home in an unstable manner. His negligent acts, errors and omissions directly caused or contributed to the damages, deterioration and death of Mr. Medina.

6.3     Codefendants doctors´ acts and omissions and the nursing personnel thus, the acts and omissions of the hospital institutions, resulted in inappropriate and disparate screening and discharging the patient without stabilization treatment, in violation of the EMTALA provisions, which directly caused and or contributed to the damages, deterioration and death of Ms. Medina

6.4     "Hospital Metropolitano de la Montaña" and "Hospital Pavia Arecibo" did not fulfill their statutory duty to screen and stabilize Mr. Medina, while staying in their facilities with an emergency medical condition, prior to discharging her on several occasions.  Conversely, patient's medical condition did not receive an adequate screening and she was not stabilized. Patient's condition worsened each minute that went by without the appropriate management and treatment, resulting in a total medical catastrophe and her eventual demise.  Therefore, the unfortunate decision of "Hospital Metropolitano de la Montaña" and Hospital Pavia Arecibo, through their agents or employees, by not screening and later discharging this very unstable patient, while not offering the medical attention that any other patient in her position would have received, were flagrant violations to EMTALA.

6.5     Patient's damages and untimely death was caused or contributed to be caused, by "Hospital Metropolitano de la Montaña" and Hospital Pavia Arecibo's violations of the EMTALA's screening and stabilization provisions and the negligent lack of treatment that was denied or offered to her.  Had it not been by all these violations and the negligent acts and omissions of all co-defendants, her physical pain, emotional sufferings and demise, as well as plaintiffs' damages would not have happened.

6.6     Plaintiffs' damages, concerning those resulting from Mr. Medina's demise, are the direct consequence of the negligence and medical malpractice of defendant's agents or employees, while acting within the scope of their agency or employment with the "Hospital

Metropolitano de la Montaña" and "Hospital Pavia Arecibo", participating hospitals under the EMTALA and the aforementioned violations to said statute.

## VII.   DAMAGES

7.1    As the direct and proximate result of the negligent acts an omissions of defendant's doctors and the hospitals nursing staff, amounting to medical malpractice and hospital negligence alleged heretofore, co-plaintiff Serafin Cortés-Montero has suffered, is suffering and will continue to suffer intense and permanent emotional damages for his wife loss, all of which are estimated in an amount of not less than $2,000,000.00.

7.2    As the direct and proximate result of the negligent acts and omissions of defendant's doctors and the hospitals nursing staff, amounting to medical malpractice and hospital negligence alleged heretofore, co-plaintiff CCM, has suffered, is suffering and will continue to suffer intense and permanent emotional damages for the loss of his mother, all of which are estimated in an amount of not less than $2,000,000.00.

7.3    As the direct and proximate result of the defendants' acts and omissions, amounting to the EMTALA violations alleged heretofore, the  patient's heirs, CCM, son and Serafín Cortés-Montero, her widower respectively, inherited her EMTALA cause of action (survivors' claim) for all her damages, the totality of which are estimated in the sum of $3,000,000.00.

7.4    As the direct and proximate result of the negligent acts and omissions of defendant doctors and the hospital nursing staff amounting to medical malpractice and hospital negligence alleged heretofore, the heirs of the deceased patient: CCM, son and Serafín Cortés-

Montero, her widower respectively, inherited her local cause of action (survivors' claim) for her physical pain and emotional sufferings since the onset of her condition on December 26, 2015 until her demise, all of which are estimated in the sum of $3,000,000.00.

7.5     The applicable statutes of limitations were tolled by a Complaint filed on December 28, 2016 at the Commonwealth of Puerto Rico Court of First Instance, Civil No. KDP2016-1630, dismissed by a judgment entered by that court, without prejudice, on May 26, 2017.

**WHEREFORE**, it is respectfully requested from this Honorable Court to enter judgment on plaintiffs' behalf and against defendants, granting a judgment for the sums herein requested, together with pre-judgment interests, costs and reasonable attorney's fees and grant plaintiffs such other relief, as it may deem proper and necessary warranted by the proven allegations and the law.

In Caguas, Puerto Rico, this 19th. Day of December, 2017.

**Velázquez Law Offices, PSC**

Counsel for plaintiffs
PO Box 188
Caguas, Puerto Rico 00726
Tel. 787-744-9598
Fax. 787-744-3482
Email: jfvlaw@gmail.com

*S/José F. Velázquez Ortiz*
JOSE F. VELAZQUEZ ORTIZ
USDC-PR 123310